# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| YAHYI SHIHEED, #333292 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-2974 |
| CORRECTIONAL OFFICER B. FANN, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Plaintiff Yahyi Shiheed filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983. Defendant M. Metheny ("Medical Defendant") and Defendants B. Fann, D. Gursky, and W. Iser ("Correctional Defendants") have filed Motions to Dismiss or, in the Alternative, for Summary Judgment. ECF Nos. 21 & 37. Plaintiff has responded. ECF Nos. 17, 23 & 39. After review of the papers and applicable law, the Court determines that a hearing is unwarranted. See Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the dispositive motions will be GRANTED IN PART and DENIED IN PART.

### Background

Plaintiff, an inmate currently confined at the North Branch Correctional Institution ("NBCI"), filed the instant Complaint alleging that on August 23, 2012, he was moved to another cell by Correctional Defendants Fann, Gursky, and Iser. Plaintiff states after being placed in a new cell he asked to speak to the lieutenant because he believed the move was unnecessary but his request was refused by Gursky. Plaintiff states that he "rotated the cuffs in front of me." Fann and Iser approached his cell door and called to have the cell door opened, without using the

proper procedures. When the door opened Iser began yanking Plaintiff's cuff in an effort to pull them off Plaintiff's wrists. Plaintiff states that he and Iser began tugging on the cuffs and Iser "slung" [Plaintiff] on the floor of the tier and Fann and Iser tried to throw Plaintiff back into his cell. When he was back in his cell Correctional Defendants began punching, hitting, and kicking Plaintiff's body and head while calling him "nigger." Plaintiff states that Correctional Defendants then strapped a tether to his cuffs and pulled his wrist through the open metal slot in his door so the cuffs could be removed. Plaintiff states that after the cuffs were removed Defendants forcefully and purposefully shut the metal slot on his arm. Plaintiff states that blood shot out of his arm and his skin was hanging off his arm. Plaintiff indicates that Correctional Defendants left saying that they hoped he died and he was left in his cell with puddles of blood. ECF Nos. 1, 4 & 5.

Officers from other tiers came and took Plaintiff to the medical department to see Medical Defendant Monica Metheny who "said [he] was fine." Plaintiff states she "did what she could and she was ordered to send me out to an outside hospital." Plaintiff was transported to the emergency room where he received 38 stiches in his arm. He was returned to NBCI and placed back in his cell without a mattress. He was not taken to the infirmary for further treatment. Plaintiff states that his mattress was taken by the Correctional Defendants so that he could be in more pain and suffering when he slept. Plaintiff also alleges that he received a ticket on August 25, 2012, and Correctional Defendants lied about the incident.[1] Id.

---

[1] Plaintiff filed a Supplemental Complaint on September 19, 2013, alleging additional allegations of retaliation, mail and property tampering, unsanitary conditions, and the like. ECF No. 31. Those complaints are not properly before the Court and shall not be considered here. Counsel appointed for Plaintiff may determine the viability of such claim at a later date.

**Standard of Review**

A. <u>Motion to Dismiss</u>

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. <u>See</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. <u>Id.</u> at 562. The court need not, however, accept unsupported legal allegations, <u>see</u> <u>Revene v. Charles Cnty. Comm'rs</u>, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, <u>see</u> <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a Motion to Dismiss pursuant to Rule 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. <u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005); <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997); <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.3d

321, 325-26 (4th Cir. 2001); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 at 555 (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.  Summary Judgment

Summary Judgment is governed by Rule 56(a) which provides that:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the

evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.      Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The subjective component requires "subjective

6

recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown, 240 F.3d at 390 (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's allegation that Metheny was deliberately indifferent to his serious medical need is refuted by the record. Plaintiff was brought to the medical unit for assessment of a wound on his left arm on August 23, 2012. ECF No. 21, Ex. 1, p. 3. Plaintiff was seen by Medical Defendant Metheny who noted that correctional staff were applying pressure to Plaintiff's wound, which was actively bleeding. Upon further examination, she observed a 3 x 5 cm avulsion extending to the deep fascia. Metheny immediately referred Plaintiff to Physician's Assistant Greg Flury for further assessment.[2] Id.

---

[2] Plaintiff avers that Metheny told him he was fine and she could not provide any form of medical treatment but then Flury "walked into the room, seen the plaintiff injury and immediately told Defendant (RN) Monica Metheny that plaintiff needed to be taken to the Emergency Room of the outside hospital at: Western Maryland Health System." ECF No. 23, Affidavit. Even if true, Plaintiff has failed to point to any injury arising from Metheny's conduct as he was in fact transported to the Emergency Room in a timely fashion.

7

Flury examined Plaintiff, noting a large avulsion to the ulnar aspect of the left forearm penetrating past the deep fascia with visualization of the ulnar vasculature. Plaintiff advised that he was suffering from decreased sensation along the 5th finger. Flury requested an urgent evaluation of Plaintiff at the Western Maryland Health System's Emergency Department. Id. at 5-8.

Plaintiff was transported to the Western Maryland Health System ("WMHS") Emergency Room for further evaluation. Upon examination, Plaintiff reported lacerating his forearm against the sharp edge of the cell door during a struggle with correctional staff. Plaintiff was diagnosed with a complex laceration extending to the tendon sheath which was sutured. He was provided a tetanus shot, an antibiotic, and an analgesic. He was discharged the same day with the prognosis that his injury would likely heal without complication, although a follow-up evaluation was recommended. Id. at 79-80, 87.

Plaintiff was evaluated by Metheny on August 29, 2013, in response to sick call slips he submitted seeking follow-up care for his arm.[3] Id. at 11-12. Metheny noted healing with scabbing at the injury site and that the stitches were intact. No signs of infection were seen and it was noted that Plaintiff had good capillary refill suggestive of intact circulation. Metheny cleaned the wound with saline and antibiotic ointment. Plaintiff was referred to a higher level provider and advised of the signs and symptoms of infection. Id.

Plaintiff was again evaluated by Metheny on September 5, 2012. At Plaintiff's request, Metheny requested Plaintiff be scheduled for suture removal. He was seen the following day by Metheny who removed the stitches and cleansed the area with saline and antibiotic ointment. No

---

[3] Plaintiff indicates he should have been seen for follow-up care sooner than six days after the injury and should not have needed to submit sick call slips in order to be seen. ECF No. 23, Affidavit.

signs or symptoms of infection were noted. Plaintiff had no further encounters with Metheny regarding the injury to his arm. Id. at 13-15.

Plaintiff has been provided appropriate medical care for the injury to his arm. He was evaluated in a timely manner by medical staff, transported in a timely manner to the emergency room for further treatment, and provided timely and appropriate follow-up care once returned to the prison. Plaintiff was provided antibiotics and analgesic medication. His wound was cleaned and checked for infection. There is no evidence that any further treatment was deemed necessary. Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. See Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to put the material fact of this case in dispute. See generally Gray v. Spillman, 925 F.2d 90 (4th Cir. 1991). Accordingly, Metheny is entitled to summary judgment.

B.  Exhaustion

Correctional Defendants maintain that Plaintiff's Complaint against them should be dismissed for failure to exhaust administrative remedies. ECF No. 37.

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the administrative remedy procedures ("ARP") process. The Division of Correction's Directive on Administrative Remedy Procedures, DCD # 185-002 outlines the ARP process. The ARP request must be filed within 30 days of the date on which the incident occurred, or 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. DCD # 185-002, § VI. L.3. If the request is

denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. DCD # 185-002, VI. M.1. If the appeal is denied, the prisoner has 30 days to file a grievance with the Executive Director of the Inmate Grievance Office. See Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. title 12 § 07.01.03; see also DCD # 185-002, § VI.N.1. In order to show administrative exhaustion, the plaintiff must demonstrate that he appealed his grievance all the way to the Inmate Grievance Office through all three steps in the administrative process.

Plaintiff has failed to exhaust his claims regarding the taking of his mattress and purported delay in provision of follow-up medical care. The record evidence demonstrates that Plaintiff failed to exhaust his administrative remedies as to these claims.[4]

The Court declines, however, to find that Plaintiff failed to exhaust his administrative remedies as to his excessive force claim. The PLRA requires only that a plaintiff exhaust "available" remedies. Once a claim has been referred, as here, to the Internal Investigation Unit, the administrative processing of that ARP ceases. There were no further remedies available to Plaintiff once the IIU began its investigation of his claim of excessive force.

C.  Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[4] Plaintiff's claim that Defendants deprived him of a mattress when he returned to the prison and delayed follow-up medical care would otherwise be subject to dismissal as Plaintiff has failed to allege, much less show, adversity resulting from the alleged conduct. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally-protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Where there is no impairment of the Plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. See ACLU of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993).

sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 559 U.S. 34. The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Wilkens, 559 U.S. at 38.

Correctional Defendant Gursky avers that on August 23, 2012, he was assigned as a wing officer in Housing Unit #1 C-Tier. ECF No. 37, Ex. 1. Correctional Defendant Iser avers that on the date he was assigned as the Officer-in-Charge of Housing Unit #1. Id., Ex. 3. At approximately 12:48 p.m. Gursky was moving Plaintiff from a temporary housing cell to his newly-assigned cell. After placing Plaintiff in the new cell and securing the door, Plaintiff quickly sat on the bunk and stepped through his handcuffs (referred to as "slipping cuffs") bringing the handcuffs from behind his back to the front of his chest, yelling "You're not getting these cuffs back!" Gursky closed the security slot (also known as the "feed-up" slot) and contacted Correctional Defendant Iser via radio, asking that he report to Plaintiff's cell. Id., Ex. 1.

Iser avers that he received the call from Gursky at approximately 12:48 p.m. Id., Ex. 3. When Iser arrived at the cell he attempted to convince Plaintiff to give up the restraints. Id., Ex.

1 & 3. Plaintiff refused. Iser advised Plaintiff that if he did not give up the restraints force would be used. Plaintiff again refused to comply. Iser called for the door to be opened so that a "tether" could be attached to the restraints. As the cell door opened, Iser grasped the restraints in order to connect the tether, but Plaintiff stepped out of the cell and became combative toward Iser and Gursky. Iser forced Plaintiff to the floor in an effort to gain compliance as Plaintiff continued to resist. After Iser gained control of Plaintiff, Gursky applied the tether and he and Iser put Plaintiff back in the cell and closed the cell door. Plaintiff remained combative and refused to place his hand out of the security slot, instead sitting on the cell floor, placing his feet against the door, and pulling down and inward on the tether in an effort to pull Gursky into the slot. Gursky and Plaintiff struggled to gain control of the tether and restraints. Gursky gained control by pulling back on the tether and restraints forcing Plaintiff's hand out of the security slot so that the restraints could be removed. Gursky removed the restraints and after doing so noticed Plaintiff's arm was bleeding. Iser left the area and called for medical staff to treat Plaintiff's injury. Id.

Correctional Officers Ortt and Soltas responded to the cell, applied handcuffs to Plaintiff and escorted him to the Medical Room where he was evaluated by Monica Metheny. Id. Correctional Defendant Fann avers that he is aware that an incident occurred between Plaintiff and custodial staff on August 23, 2012, because he heard a commotion, but he was not involved in the incident, nor did he witness the incident because he was at the other end of the tier. Id., Ex. 4. Gursky and Iser also aver Fann was not involved in the incident. Id., Exs. 1 & 3.

As a result of the incident, Plaintiff was charged with a violation of institutional rules #116-"Misuse, tampering with, damaging, destruction, or unauthorized possession of security

equipment, tools, etc.," #312 "Interfering with or resisting the duties of staff," and #400 "Disobeying a direct lawful order." Id., Ex. 2. He pleaded guilty and accepted a plea agreement. Id., Ex. 5.

The day after the incident, Plaintiff filed an ARP request alleging that on August 23, 2012, his arm was closed in the metal slot by Iser, Gursky, and Fann. Id., Ex. 6. The ARP was administratively dismissed because the matter was being investigated by the IIU. Id.

Plaintiff's claim of excessive force as to Defendant Fann fails. The record evidence demonstrates that Fann was not involved in the altercation involving Plaintiff. Fann's mere presence on the tier during the altercation between Plaintiff, Gursky, and Iser is insufficient to state a claim of excessive force against him. As such, Plaintiff's Complaint against Fann shall be dismissed.

As to Correctional Defendants Iser and Gursky, however, Plaintiff's claim shall proceed. There are genuine disputes of material fact concerning the timing and cause of the injury to Plaintiff's forearm. Correctional Defendants Iser and Gursky maintain the injury occurred as they were attempting to gain control over Plaintiff who was actively resisting their efforts to remove his handcuffs and striving to pull them into the feed slot. Iser and Gursky maintain that they simply countered Plaintiff's aggressive maneuvering. Plaintiff does not dispute that he slipped his handcuffs and defied orders to have his handcuffs removed. He indicates that the Correctional Defendants failed to follow protocol regarding his request to speak to a higher authority regarding the change in his housing assignment.[5] He avers that the injury did not

---

[5] To the extent written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a constitutional violation. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does

13

occur until after his arms were pulled through the slot and his handcuffs were removed. At that time, having gained his full compliance, Plaintiff claims Correctional Defendants Iser and Gursky sadistically and deliberately slammed the feed slot onto his forearm causing the injury. Taking Plaintiff's allegations as true, Correctional Defendants Iser and Gursky were not acting to restore order, as order had already been restored, but rather were acting maliciously to cause harm. Whether Correctional Defendants acted maliciously and sadistically to cause harm to Plaintiff is a material fact disputed by the parties. The issue requires credibility determinations not appropriate for resolution on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If Correctional Defendants Gursky and Iser acted in the manner alleged by Plaintiff they would not be entitled to qualified immunity.

## Conclusion

For the reasons stated, summary judgment is granted as to Medical Defendant Metheny and Correctional Defendant Fann and denied as to Correctional Defendants Iser and Gursky. Counsel shall be appointed for Plaintiff. A separate Order shall be entered in accordance with this Memorandum.

March 5, 2014                                /s/
                                             _____
                                             George L. Russell, III
                                             United States District Judge

---

not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).