UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YAHYI SHIHEED, #333292, | |
| Plaintiff, | |
| v. | Civil Action No. 1:12-cv-2974-GLR |
| CORRECTIONAL OFFICER B FANN, et al., | |
| Defendants. | |

**FOURTH AMENDED COMPLAINT**

Pursuant to this Court's order of March 5, 2014 (ECF No. 42), Plaintiff Yahyi Shiheed, through counsel, submits his fourth amended complaint against the State of Maryland, the Maryland Department of Public Safety and Correctional Services, North Branch Correctional Institution, and two named individuals, Correctional Officer Dustin Gursky and Sergeant Walter Iser, who were responsible for maliciously injuring Plaintiff and causing permanent and irreparable damage to his arm.  Because the Defendants have refused to respond to Plaintiff's discovery requests until the Court enters a discovery schedule, Plaintiff Shiheed has limited access to documents and materials; accordingly, Plaintiff reserves his right to amend his complaint further.

**Background**

1.     On August 23, 2012, Plaintiff Shiheed was injured by Defendants Gursky and Iser when they slammed his arm in a metal security slot—commonly referred to as a "feed-up slot"— in his cell door.

2.      The resultant wound was far from inconsequential:  there was significant bleeding, and the injury required medical attention to treat a severe gash that resulted in a ruptured tendon sheath and skin "hanging off" Plaintiff Shiheed's arm such that the underlying bone and muscle tissue could be seen.

3.      This injury directly resulted from Defendants' negligent acts or omissions and Defendants' deliberate and reckless indifference to Plaintiff Shiheed's Constitutional right to be protected from cruel and unusual punishment.

## Jurisdiction and Venue

4.      This is a civil action seeking damages and other relief for the injury to Plaintiff Yahyi Shiheed, #333292.  This action arises under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the United States Constitution, and the common law.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

6.      This Court has supplemental jurisdiction over Plaintiff's negligence claims under 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Defendants Gursky and Iser under Md. Courts Jud. Pro. Code Ann. § 6-103, as the conduct that forms the basis of Plaintiff's complaint occurred in Maryland, and Defendants Gursky and Iser caused tortious injury to Plaintiff within the state of Maryland.

8.      Venue is proper under 28 U.S.C. § 1391(b).

## Parties

9.      Plaintiff Yahyi Abdul Shiheed is and, at all times relevant to this action, was an adult prisoner of the State of Maryland, in the custody of the Maryland Department of Public

Safety and Correctional Services.  Plaintiff is and, at all times relevant to this action, was an inmate confined at North Branch Correctional Institution.

10.     Defendant State of Maryland is the governing body that sentenced Plaintiff Yahyi Shiheed and assumed responsibility for his incarceration and safety.  Defendant State of Maryland operates the Maryland Department of Public Safety and Correctional Services, which is the state entity that is and, at all times relevant to this action, was responsible for the operation of state correctional facilities, including North Branch Correctional Institution, and for the incarceration, supervision, protection, and treatment of Plaintiff Shiheed.  In addition, Defendant State of Maryland is the governing body that employed Defendants Gursky and Iser to serve as correctional officers at North Bridge Correctional Institution.

11.     Defendant Maryland Department of Public Safety and Correctional Services ("Maryland DPSCS") is a government agency of the State of Maryland.  Defendant Maryland DPSCS has and, at all times relevant to this action, had responsibility for the operation of state correctional facilities and for the incarceration, supervision, protection, and treatment of persons incarcerated in the state prison system, including at North Branch Correctional Institution.

12.     Defendant North Branch Correctional Institution ("NBCI") is a Maryland DPSCS state correctional facility located at 14100 McMullen Highway SW, Cumberland, Maryland, 21502.  NBCI houses persons who have been sentenced under the laws of the State of Maryland.

13.     Defendant Correctional Officer Dustin Gursky is and, at all times relevant to this action, was a correctional officer assigned to NBCI.  On August 23, 2012, Defendant Gursky was assigned as a wing officer in NBCI Housing Unit #1 on the C-Tier.  Defendant Gursky is sued in both his official and individual capacities.

14.     Defendant Sergeant Walter Iser is and, at all times relevant to this action, was a correctional officer assigned to NBCI.  On August 23, 2012, Defendant Iser was assigned as the Officer-In-Charge of NBCI Housing Unit #1.  Defendant Iser is sued in both his official and individual capacities.

## Factual Allegations

15.     Maryland DPSCS is charged by statute to supervise the State of Maryland's correctional facilities and to manage those facilities in such a manner that protects and provides for the inmates housed therein, including protecting them from criminal violations by correctional officers.  *See, e.g.*, Md. Correctional Servs. Code Ann. §§ 8-103, 8-105, 10-701; *see also* Md. Correctional Servs. Code Ann., *generally*.

16.     On August 23, 2012, Plaintiff Yahyi Shiheed was an inmate at NBCI, assigned to Cell 53 on the C-Tier of Housing Unit #1.

17.     On the morning of August 23, 2012, Plaintiff Shiheed was informed by Correctional Officer B. Fann that he would be moving to a new cell on the B-Tier later that day.

18.     Correctional Officer Fann instructed Plaintiff Shiheed to pack up his belongings in anticipation of the move.

19.     After Plaintiff Shiheed had packed up his belongings, Correctional Officer Fann handcuffed Plaintiff Shiheed's hands behind his back and escorted him out of Cell 53 on the C-Tier.

20.     However, Correctional Officer Fann informed Plaintiff Shiheed that, because his new cell was not yet ready, Plaintiff Shiheed would first be taken to an isolation cell to wait for his new cell to become available.

21.     Correctional Officer Fann escorted Plaintiff Shiheed into an isolation cell and secured Plaintiff Shiheed inside the cell with his handcuffs removed.

22.     Subsequently, at approximately 12:45 p.m., Defendant Correctional Officer Gursky came to the isolation cell to escort Plaintiff Shiheed to his new cell, and he again handcuffed Plaintiff Shiheed's hands behind his back before moving him out of the isolation cell.

23.     Once cuffed, Defendant Correctional Officer Gursky informed Plaintiff Shiheed—for the first time—that he would not be assigned to a cell on the B-Tier, but was instead being moved to Cell 19 on the C-Tier.

24.     Plaintiff Shiheed objected to this change in his housing situation from what he had been previously promised, and he asked to speak to a supervisor regarding this unnecessary change from one cell in the same tier to another.  Defendant Correctional Officer Gursky refused the request.

25.     The movement between cells on the C-Tier was arbitrary, required Plaintiff Shiheed to pack up his belongings unnecessarily, and disrupted the status quo on the C-Tier for no reason.

26.     Upon reaching Cell 19 on the C-Tier, Plaintiff Shiheed was placed into the cell, and the door was shut behind him.  He clearly reiterated his request to speak to a supervisor, but this request was once again denied.

27.     Under normal protocol, Plaintiff Shiheed would have backed up to the door and given Defendant Correctional Officer Gursky access to the handcuffs through the feed-up slot in the metal cell door so they could be removed.

28.     Instead, once inside the cell, Plaintiff Shiheed "rotated his cuffs"—that is, he stepped through the circle created by his cuffed hands so that the handcuffs and his hands rested

in front of his body, rather than behind his back.  Plaintiff Shiheed did so because he believed, based on his understanding of NBCI policy, that rotating his cuffs would require Defendant Correctional Officer Gursky to call a supervisor to come speak to Plaintiff Shiheed.  Plaintiff Shiheed also clearly reiterated his request to speak to a supervisor, but this request was again denied.

29.    Instead of following NBCI policy, Defendant Correctional Officer Gursky called on his radio for the door to Cell 19 to be opened.  When the cell door was opened, Defendants Correctional Officer Gursky and Sergeant Iser (the "Defendant Officers") entered Cell 19 and roughly grabbed Plaintiff Shiheed to force him to let the officers remove the handcuffs.

30.    In the subsequent altercation—during which Plaintiff Shiheed remained handcuffed—Plaintiff Shiheed and the Defendant Officers exited the cell and continued to struggle with each other on the walkway in front of the cell.

31.    During the altercation, Defendants Correctional Officer Gursky and Sergeant Iser knocked Plaintiff Shiheed to the ground inside his cell and then began to punch and kick Plaintiff Shiheed—again, while he was handcuffed and unable to protect himself—while cursing at him and calling him a "nigger."

32.    The Defendant Officers continued their assault while attaching a "tether" to Plaintiff Shiheed's handcuffs, then exited the cell and shut the cell door, leaving Plaintiff Shiheed on the ground inside his cell.

33.    A tether is a long rope or leash that can be attached to an inmate's handcuffs and be used to force the inmate to approach a cell door from within, while the officer(s) controlling the tether stand safely outside the cell.  On information and belief, the use of the tether is standard practice and policy at NBCI when dealing with inmates who refuse to allow their

handcuffs to be removed.  NBCI mandates the use of the tether to keep the inmate safely within a locked cell and keep the officers protected, while still allowing the removal of the handcuffs.

34.     The two officers—Defendants Correctional Officer Gursky and Sergeant Iser—then used the tether to drag Plaintiff Shiheed towards the cell door and forced his arms through the metal "feed-up slot" in the cell door.

35.     The feed-up slot is a rectangular security panel in the metal cell door that opens in order to access the inmate inside the cell without having to open the door.  On information and belief, it is used for a number of reasons: one purpose is to serve the inmate food through the cell door at mealtimes; another common use of the feed-up slot is to place or remove an inmate's handcuffs through the slot.

36.     On information and belief, this second use of the feed-up slot is standard practice and policy at NBCI when applying or removing handcuffs from any inmate within a cell.  NBCI mandates the use of the feed-up slot to safely apply or remove handcuffs while keeping an inmate safely within a locked cell and keeping the officers protected.

37.     Once back in his cell and tethered, Plaintiff Shiheed realized that further fighting was futile, and ceased his resistance.  He again verbally demanded his right to speak to a supervisor.

38.     When the Defendant Officers dragged Plaintiff Shiheed to the cell door of Cell 19 by pulling the tether through the feed-up slot, Plaintiff Shiheed had ceased resisting.

39.     The Defendant Officers then seized Plaintiff Shiheed's arms through the feed-up slot, pulled them partially through the slot, and began removing the cuffs from Plaintiff Shiheed's wrists.  Plaintiff Shiheed did not resist.

40.     After removing the cuff from Plaintiff Shiheed's right wrist, the Defendant Officers loosened the cuff from around Plaintiff Shiheed's left wrist, which was still extended through the feed-up slot.  Again, Plaintiff Shiheed did not resist.

41.     Before the cuff was completely removed from Plaintiff Shiheed's left wrist, the Defendant Officers slammed the metal feed-up slot closed, driving it forcefully into Plaintiff Shiheed's left wrist and arm.  The choice to slam the metal feed-up slot closed was entirely malicious, as Plaintiff Shiheed still was not, and had not been, resisting the officers' attempts to remove the handcuffs.

42.     As a direct result of the officers slamming the feed-up slot closed, the sharp metal edge of the feed-up slot sliced Plaintiff Shiheed's left wrist and arm, creating a deep gash in his forearm that immediately began pouring blood.

43.     The gash caused by the Defendant Officers' actions was, in fact, so deep that Plaintiff Shiheed's bone and muscle tissue were visible.

44.     The Defendant Officers then walked away, leaving Plaintiff Shiheed to lie on the floor of Cell 19, clutching his profusely bleeding left arm.

45.     The Defendant Officers were clearly aware of the extent of Plaintiff Shiheed's injuries, as evidenced by the fact that, before walking away, Defendant Sergeant Iser maliciously remarked that he hoped Plaintiff died.

46.     Despite Plaintiff Shiheed's repeated screams of pain and requests for help, neither Defendant Correctional Officer Gursky nor Defendant Sergeant Iser slowed in their departure from the area around Cell 19, nor did they take steps to obtain medical care for the significant injury to Plaintiff Shiheed's left arm.

47.     Plaintiff Shiheed continued to call for help, and his calls were echoed by the inmates in the neighboring cells who had observed the entire incident.

48.     Eventually, correctional officers from B-Tier and D-Tier arrived to Plaintiff Shiheed's cell and—observing Plaintiff Shiheed lying in a pool of his own blood on the floor of his cell—opened the cell to provide medical assistance.

49.     Plaintiff Shiheed was again handcuffed, despite the fact that the flesh was dangling from his left arm and the wound was pouring blood.

50.     Throughout the walk to the prison infirmary, Plaintiff Shiheed's wound continued to shoot blood, and his wound was further aggravated by the handcuff on his left wrist.

51.     Plaintiff Shiheed was ultimately taken by ambulance to Western Maryland Regional Medical Center for emergency medical treatment because his injury was too serious to be treated by the infirmary itself.

52.     During his treatment at the infirmary and throughout the transportation to Western Maryland Regional Medical Center, Plaintiff Shiheed's wound continued to bleed at a high rate; additionally, the wound continued to be aggravated by the handcuff on his left wrist.

53.     Plaintiff Shiheed was given no anesthetic or painkillers at any time prior to his arrival at Western Maryland Regional Medical Center, which only prolonged his suffering.

54.     Plaintiff Shiheed suffered an extremely deep laceration to his left wrist and forearm.  The wound left a flap of flesh dangling from his arm.

55.     Through the laceration, Plaintiff Shiheed's left forearm bone (ulna) was visible, as was the network of blood vessels that continued to bleed copiously at the emergency room.

56.     The avulsion (a medical term used to describe an injury where a body structure – in this case, skin and flesh—is forcibly detached from its normal insertion point by trauma) to

Plaintiff Shiheed's forearm exposed deep fascia and caused nerve damage, as Plaintiff Shiheed has complained of a loss of sensation in his fifth finger on his left hand and numbness around the wound.

57.     In addition, Plaintiff Shiheed suffered a complex laceration of the tendon sheath in his left forearm, which put him at risk for loss of strength and mobility in the use of his left hand.

58.     Plaintiff Shiheed's wound required 38 stitches to close, and multiple follow-up visits were necessary to ensure that the wound healed and did not become infected.

59.     Plaintiff Shiheed's injury was neither an accident nor an isolated incident.  NBCI and the Maryland DPSCS have a history of lax supervision and affirmatively encouraging staff misbehavior, which directly contributed to Plaintiff Shiheed's injuries.

60.     In February 2014, Bobby Shearin—who had been warden of NBCI since 2009 and was warden during all times relevant to this action—was fired by Maryland DPSCS for failing to hold his staff accountable for their actions and for allowing the chain of command to "lapse to the point of ineffectiveness."[1]

61.     Mr. Shearin was also accused of failures in leadership and management which directly led to the mistreatment of inmates.  Inmates at NBCI were regularly harassed by the correctional officers, deprived of meals and recreational time, and abused by the guards.[2]

---

[1]     *See* The Associated Press, *Warden Fired at Max-Security Western Md. Prison*, CBS BALTIMORE, Feb. 4, 2014, http://baltimore.cbslocal.com/2014/02/04/warden-fired-at-max-security-western-md-prison/.

[2]     *See, e.g.*, Quinn Kelley and Colin Campbell, *Prison Chief Replaced at Western Md. Prison That Saw Stabbings*, THE BALTIMORE SUN, Feb. 4, 2014, http://articles.baltimoresun.com/2014-02-04/news/bs-md-north-branch-warden-20140204_1_prison-chief-western-maryland-prison-prison-employees.

62.     The complaints against NBCI and Mr. Shearin included his failure to actually ensure that the guards at NBCI followed official policy, or were reprimanded for failing to do so. One report listed the complaints against him as including:

    a.     "Failure to provide leadership according to department policy;"

    b.     "Failure to hold staff accountable for actions, creating an unsafe environment;"

    c.     "Allowing chain of command to lapse to point that supervisors are ineffective;"

    d.     "Violation of policy and failure to follow orders and directives;" and

    e.     "Failure to address serious staff misconduct."[3]

63.     At all relevant times, on information and belief, NBCI had a culture and a set of customs and practices that encouraged outlaw behavior by correctional officers who were secure that they would not be punished or even reprimanded for violating the rights of inmates like Plaintiff Shiheed.

64.     The Defendant Officers assaulted Plaintiff Shiheed and ignored his requests for medical treatment because they knew, based on the culture encouraged at NBCI and negligently ignored by Maryland DPSCS, that they would face no penalties.  Simply put, they improperly retaliated using excessive force and walked away from Plaintiff Shiheed as he lay bleeding on the floor of his cell because they knew NBCI and Maryland DPSCS would let them get away with it.

65.     On information and belief, the result of the official NBCI investigation into the incident underlying this complaint was to find Plaintiff Shiheed responsible for assaulting the Defendant Officers, and to increase the length of his sentence.  The Defendant Officers were

---

[3]     *See, e.g.*, Michael A. Sawyers, *North Branch Warden Fired*, CUMBERLAND TIMES-NEWS, Feb. 3, 2014, http://www.times-news.com/local/x1280774311/North-Branch-warden-fired.

found to be not responsible for Plaintiff Shiheed's injuries, further demonstrating the culture at NBCI of outlaw behavior and free violations of the civil rights of the inmates.

## Causes of Action

### First Cause of Action – 42 U.S.C. § 1983 – Violation of Eighth and Fourteenth Amendments (Deliberate Indifference to Health/Safety) – Against All Defendants

66.   Plaintiff hereby incorporates paragraphs 1 through 65, supra, as if fully set forth herein.

67.   At all relevant times, Defendants operated the prison under color of state law.

68.   Having incarcerated Plaintiff, limited his means of self-protection, and foreclosed his access to private aid, Defendants were constitutionally and otherwise required to provide him with protection from substantial and unreasonable risk of harm.

69.   The Eighth and Fourteenth Amendments prohibit unnecessary and wanton infliction of pain by virtue of their guarantee against cruel and unusual punishment.  This constitutional prohibition protects prisoners from deliberate indifference to their serious medical needs by prison staff and officials.

### *Defendants Correctional Officer Gursky and Sergeant Iser, In Their Individual and Official Capacities*

70.   Defendants Correctional Officer Gursky and Sergeant Iser violated Plaintiff's Eighth and Fourteenth Amendment rights by showing deliberate indifference to Shiheed's serious medical need and denying him medical care for the injuries sustained to his wrist.

71.   As described above, on August 23, 2012, Plaintiff Shiheed (i) had an objectively serious medical condition and, (ii) the Defendant Officers were aware of Plaintiff's need for medical attention but failed to provide such care or assure that the needed care was available.

72.   In support of Plaintiff's objectively serious medical condition, Plaintiff refers to the allegations above, specifically noting that:

a. When the Defendant Officers slammed the metal feed-up slot into Plaintiff's left wrist and arm, it caused a deep gash that immediately started to bleed profusely.

b. The cut in Plaintiff's arm was so deep that Plaintiff's bone was visible.

c. When other correctional officers from different tiers in the prison heard Plaintiff's calls for helps (and the shouting of other inmates who had witnessed the event), the officers approached Plaintiff's cell and found Plaintiff bleeding significantly.

d. Plaintiff had to be taken to the infirmary and eventually to Western Maryland Regional Medical Center for emergency medical care, where he was treated for a deep laceration to his left wrist and forearm.

e. Plaintiff's wound left a flap of flesh dangling from his arm and caused Plaintiff to lose feeling in part of his left hand.

f. Plaintiffs also suffered a complex laceration of the tendon sheath in his left forearm, putting him at risk for loss of strength and mobility in the use of his left hand.

g. Plaintiff's wound required 38 stitches to close, and multiple follow-up visits were necessary to ensure that the wound healed and did not become infected.

73. The Defendant Officers were subjectively aware of Plaintiff's need for medical attention but nevertheless failed to provide care or ensure the needed care was available. In support of this allegation, Plaintiff incorporates the allegations above and specifically notes as follows:

a. The Defendant Officers were present when Plaintiff sustained the deep laceration to his wrist and were responsible for causing the laceration when they slammed the feed-up slot closed on Plaintiff's wrist.

b.  Despite Plaintiff's visible injury and profuse bleeding, the Defendant Officers walked away from Plaintiff's cell while Plaintiff lay on the floor of his cell, clutching his bleeding left arm.

c.  After Plaintiff was injured, but before the Defendant Officers walked away from the area, Defendant Sergeant Iser said that he hoped Plaintiff died.  This statement alone shows that the Defendant Officers were aware of Plaintiff's serious injury.

d.  The Defendant Officers were also aware of Plaintiff's serious medical need because Plaintiff repeatedly requested help.  But neither Defendant Correctional Officer Gursky nor Defendant Sergeant Iser slowed in their departure from the area around Cell 19, nor did they take steps to obtain medical care for the significant injury to Plaintiff Shiheed's left arm.

e.  The Defendant Officers ignored Plaintiff's calls for help, as well as the calls for help which were echoed by the inmates in the cells around Plaintiff.

f.  It was not until correctional officers from different parts of the prison (the B-Tier and D-Tier) arrived at Plaintiff's cell that he was taken to receive medical attention.

74.  Based on the foregoing, Defendants Correctional Officer Gursky and Sergeant Iser are not entitled to qualified immunity; the Defendant Officers violated Plaintiff's constitutional right under the Eighth and Fourteenth Amendment to be protected against cruel and unusual punishment.  Plaintiff's constitutional rights were clearly established at the time of the incident, such that a reasonable person would have known that they were violating a constitutional right.

**Defendants State of Maryland, Maryland Department of Public Safety and Correctional Services, and North Branch Correctional Institution ("The Maryland Defendants")**

75.     Defendants the State of Maryland, the Maryland Department of Public Safety and Correctional Services, and the North Branch Correctional Institution are also liable for the violation of Plaintiff's Eighth and Fourteenth Amendment rights, because the violation of Plaintiff's rights occurred as the result of the Defendants' policies, practices, and/or custom.

76.     On information and belief, the Defendant Officers' conduct toward Plaintiff and the violation of his constitutional rights were the result of the Maryland Defendants' official and unofficial policies.  In other words, the violation of Plaintiffs' constitutional rights was a result of the Maryland Defendants' practices, customs, and failure to respond to unconstitutional behavior regarding the handling of prisoners like Plaintiff.[4]  The environment created by the Maryland Defendants fostered an environment which enabled Defendants Gursky and Iser's conduct.

77.     On information and belief, Plaintiff's allegations of deliberate indifference to serious medical needs by correctional officers at NCBI and other prisons are not isolated incidents, and the Maryland Defendants have failed to take action to stop or punish misconduct by correctional officers.

78.     The Maryland Defendants failure to stop the development of unconstitutional customs and practices toward prisoners, like Plaintiff, is causally linked to Plaintiff's injuries and the constitutional violations alleged.

---

[4]     Plaintiff has served discovery requests upon Defendants, which seek information regarding Defendants' policies, procedures, and customs, as well as information about prior incidents between correctional officers and other prison inmates.  To date, Defendants have declined to respond to these requests on the ground that the Court has not yet opened discovery.  Once the Court allows the parties to take discovery, Plaintiff anticipates that Defendants will produce documents and information that will allow Plaintiff to plead additional facts regarding the State of Maryland, Maryland DPSCS, and NBCI.

**Second Cause of Action – 42 U.S.C. § 1983 – Violation of Eighth and Fourteenth Amendments (Use of Excessive Force) – Against All Defendants**

79.     Plaintiff hereby incorporates paragraphs 1 through 78, supra, as set forth herein.

80.     At all relevant times, Defendants operated the prison under color of state law.

81.     Having incarcerated Plaintiff, limited his means of self-protection, and foreclosed his access to private aid, Defendants were constitutionally and otherwise required to provide him with protection from substantial and unreasonable risk of harm, including protection from harm that is needless or maliciously inflicted.

82.     The Eighth and Fourteenth Amendments prohibit unnecessary and wanton infliction of pain by virtue of its guarantee against cruel and unusual punishment.  This constitutional prohibition protects prisoners from prison officials' use of excessive force.

*Defendants Correctional Officer Gursky and Sergeant Iser,*
*In Their Individual and Official Capacities*

83.     Defendants Correctional Officer Gursky and Sergeant Iser violated Plaintiff's Eighth and Fourteenth Amendment rights by using excessive force against Plaintiff.  Defendants' use of force was needless, malicious, and inflicted to cause pain and injury to Plaintiff.

84.     The use of force by the Defendant Officers was not applied in a good faith effort to maintain or restore discipline.  Instead, the Defendant Officers used force to intentionally and maliciously injure Plaintiff and cause him harm.

85.     In support of Plaintiff's excessive force claim, Plaintiff refers to the allegations pleaded above and specifically notes:

     a.  At the time the Defendant Officers slammed the metal feed-up slot into Plaintiff's left wrist and arm, Plaintiff had stopped resisting;

     b.  Thus, at the time the Defendant Officers used force on Plaintiff, that force was neither necessary nor intended as a good faith effort to restore order.

16

c. Even if the use of some amount of force was necessary, the amount of force used by the Defendant Officers—and the manner in which the Defendant Officers used that force—was not a good faith attempt to restore order.  The Defendant Officers' actions were intended to inflict pain and injury to Plaintiff.

d. The extent of the injury inflicted by the Defendant Officers, described above, also shows that the use of force was excessive.  The Defendant Officers slammed the feed-up slot on Plaintiffs' wrist, causing a deep laceration that reached the bone, cut through tendons and muscle tissue, and ultimately required 38 stitches to close the wound.

e. The Defendant Officers' use of force, and the amount of force used, was a retaliatory act towards Plaintiff.

f. The Defendant Officers' use of force was not justified by a need to restore order, nor did Plaintiff's conduct pose a threat to the safety of any staff or inmates at the time the Defendant Officers used the excessive force.

g. The Defendant Officers used an excessive amount of force and made no effort to temper the amount of force used against Plaintiff.

86. Based on the foregoing, the Defendant Officers are not entitled to qualified immunity because they violated Plaintiff's constitutional right under the Eighth and Fourteenth Amendment to be protected against cruel and unusual punishment—here the use of excessive force.  Plaintiff's constitutional rights were clearly established at the time of the incident, such that a reasonable person would have known that they were violating a constitutional right and that the Defendant Officers were not permitted to retaliate or otherwise injure Plaintiff.  The Defendant Officers' actions were excessive and not in a good faith effort to restore order.

***Defendants State of Maryland, Maryland Department of Public Safety and Correctional Services, and North Branch Correctional Institution ("The Maryland Defendants")***

87.     Defendants the State of Maryland, the Maryland DPSCS, and NBCI are also liable for the violation of Plaintiff's Eighth and Fourteenth Amendment rights because the violation of Plaintiff's rights occurred as the result of the Maryland Defendants' policies, practices, and/or custom.

88.     On information and belief, the Defendant Officers' conduct toward Plaintiff and the violation of his constitutional rights were the result of the Maryland Defendants' official and unofficial policies.  Likewise, the violation of Plaintiffs' constitutional rights was a result of the Maryland Defendants' practices, customs, and failure to respond to unconstitutional behavior regarding the handling of prisoners like Plaintiff.[5]  The environment created by the Maryland Defendants fostered an environment which enabled the Defendant Officers' conduct—here retaliating and inflicting injury on Plaintiff.

89.     On information and belief, Plaintiff's allegations of excessive force by correctional officers at NCBI and other prisons are not isolated incidents, and are the result of policies and procedures that permit correctional officers to use such force without appropriate repercussions or punishment for such misconduct.

90.     The Maryland Defendants' failure to stop the development of unconstitutional customs and practices toward prisoners, like Plaintiff, thus implicitly approves of such conduct.

---

[5]     Plaintiff has served discovery on Defendants, which seeks information regarding Defendants' policies, procedures, and customs, as well as information about prior incidents between correctional officers and other prison inmates.  To date, Defendants have declined to respond to these requests on the ground that the Court has not yet opened discovery.  Once the Court allows the parties to take discovery, Plaintiff anticipates that Defendants will produce documents and information that will allow Plaintiff to plead additional facts regarding the State of Maryland, Maryland DPSCS, and NBCI.

Thus, the Maryland Defendants' policies, practices, and customs are causally linked to Plaintiff's injuries and the constitutional violations alleged.

### Third Cause of Action – Negligent Failure to Ensure Safety/Provide Medical Care – Against All Defendants

91.     Plaintiff hereby incorporates paragraphs 1 through 90, supra, as set forth herein.

92.     The Defendants and their employees were under a statutory and common law duty to provide for the safekeeping, care, and protection of all persons housed in its penal institutions, including Plaintiff.  That duty includes providing appropriate medical care to all persons in their custody with serious medical needs.

93.     Based on the same factual allegations found in the First Cause of Action above, all Defendants are liable for negligently breaching the duty of care they owed to Plaintiff when the Defendant Officers showed deliberate indifference to Plaintiff's serious medical need.

94.     The Defendant Officers knew or should have known of Plaintiff's serious medical condition and ensured that he received appropriate medical attention.  However, as described above, the Defendant Officers negligently failed to do so.

95.     The Defendant Officers knew or should have known that, as a result of their failure to ensure that Plaintiff received appropriate medical attention, it was reasonably foreseeable that Plaintiff would be at risk for nerve damage, loss of strength and mobility, and increased pain and suffering.

96.     Defendants State of Maryland, Maryland DPSCS, and NBCI are vicariously liable under the doctrine of *respondeat superior* for the acts or omissions of any units, divisions, or other entities under their ownership and control, and for the acts of any employees or agents.

97.     Plaintiff's pain, suffering, and injuries were as a direct and proximate result of the above-described negligence.  Plaintiff is entitled to recover damages for his physical and mental pain and suffering.

**Fourth Cause of Action – Negligent Use of Excessive Force – Against All Defendants**

98.     Plaintiff hereby incorporates paragraphs 1 through 97, supra, as set forth herein.

99.     The Defendants and their employees were under a statutory and common law duty to provide for the safekeeping, care, and protection of all persons housed in its penal institutions, including Plaintiff.  That duty includes protecting all persons in their custody from the use of excessive force.

100.    Based on the same factual allegations found in the Second Cause of Action above, all Defendants are liable for negligently breaching the duty of care they owed to Plaintiff when the Defendant Officers used excessive force against Plaintiff.  Defendants knew or should have known that their use of force was excessive under the circumstances.

101.    The Defendants Officers knew or should have known that their conduct would result in harm or injury to Plaintiff and that the use of force was not justified or necessary to maintain order.

102.    Defendant State of Maryland, the Maryland DPSCS, and NBCI are vicariously liable under the doctrine of *respondeat superior* for the acts or omissions of any units, divisions, or other entities under their ownership and control, and for the acts of any employees or agents.

103.    Plaintiff's pain, suffering, and injuries were a direct and proximate result of the above-described negligence.  Plaintiff is entitled to recover damages for his physical and mental pain and suffering.

**Fifth Cause of Action – Battery – Against All Defendants**

104.    Plaintiff hereby incorporates paragraphs 1 through 103, supra, as set forth herein.

105.     The Defendants and their employees were under a statutory and common law duty to provide for the safekeeping, care, and protection of all persons housed in its penal institutions, including Plaintiff.  That duty includes protecting all persons in their custody from the intentional use of force to cause harmful or offensive contact.

106.     Based on the same factual allegations found in the Second Cause of Action above, all Defendants are liable for battery based the Defendant Officers' actions.  Defendants Correctional Officer Gursky and Sergeant Iser intentionally, and without permission, made physical contact that was harmful and offensive to Plaintiff.  Defendants knew or should have known that their use of force would cause injury to Plaintiff.

107.     The Defendant Officers knew or should have known that their conduct would result in harm or injury to Plaintiff and that the use of force was not justified or necessary under the circumstances.

108.     Defendants State of Maryland, the Maryland DPSCS, and NBCI are vicariously liable under the doctrine of *respondeat superior* for the acts or omissions of any units, divisions, or other entities under their ownership and control, and for the acts of any employees or agents.

109.     Plaintiff's pain, suffering, and injuries were a direct and proximate result of the above-described battery.  Plaintiff is entitled to recover damages for his physical and mental pain and suffering.

## Prayer For Relief

WHEREFORE, Plaintiff prays that this honorable Court:

a)  Issue a judgment awarding Plaintiff compensatory damages against each Defendant in the amount of $250,000 (two hundred fifty thousand dollars);

b)  Issue an injunction preventing Defendants Gursky and Iser from further harming or interacting with Plaintiff Shiheed during the remainder of his confinement by Maryland DPSCS, or in the alternative, ordering that Plaintiff Shiheed be transferred to a different correctional institution for his own safety;

c)  Issue any other legal or equitable relief that the Court deems proper;

d)  Award Plaintiff attorneys' fees and the costs of this action;

e)  Award Plaintiff punitive damages in the amount of $5 million; and

f)  Award Plaintiff all such other and further relief to which he may be justly entitled.


### Jury Demand


Plaintiff hereby demands trial by jury of this matter.


Respectfully submitted,

Plaintiff Yahyi Shiheed

By his attorney,


 /s/ Kartik N. Venguswamy
Kartik N. Venguswamy (Bar No. 28950)
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC  20001
Tel.:  202.346.4000
Fax.:  202.346.4444
E-mail:  kvenguswamy@goodwinprocter.com

Dated: July 7, 2014

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of July, 2014, a true copy of the foregoing Fourth Amended Complaint was filed with the Clerk of the Court using the Court's CM/ECF system, which will cause a copy of the foregoing to be served on all counsel who have entered an appearance in this matter.


Dated: July 7, 2014                                            /s/ Kartik N. Venguswamy
                                                               Kartik N. Venguswamy