IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI SHIHEED,                      :

     Plaintiff,                    :

v.                                  :
                            Civil Action No. GLR-12-2974

CORRECTIONAL OFFICER DUSTIN         :
GURSKY, et al.,[1]
                                :

     Defendants.                   :

## MEMORANDUM OPINION

THIS MATTER is before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 67). The Motion is ripe for disposition. Having considered the Motion and supporting documents, the Court finds no hearing necessary. See Local Rule 105.4 (D.Md. 2014). For the reasons stated below, the Court will grant the Motion in part and deny it in part.

## I.   BACKGROUND[2]

On August 23, 2012, Plaintiff Yahyi Shiheed, an inmate at Defendant North Branch Correctional Institution ("NCBI"), was being transferred from Cell 53 on the C-Tier of Housing Unit #1 to a B-Tier cell. A correctional officer escorted Shiheed from Cell 53 to an isolation cell until his new cell became available. When the

---

[1] The Clerk is directed to correct the spelling of the Correctional Defendants' names.
[2] Unless otherwise noted, the following facts are taken from the Fourth Amended Complaint (ECF No. 51) and are viewed in the light most favorable to the nonmoving party.

new cell was ready, Defendant Correctional Officer Dustin Gursky handcuffed Shiheed and informed him that he would be assigned to Cell 19 on the C-Tier. Shiheed objected to the change and asked to speak to a supervisor, but Gursky denied the request.

Gursky placed Shiheed into Cell 19 and closed the door behind him. Shiheed was required to place his hands through the feed-up slot[3] of his metal cell door, but instead rotated his handcuffs from behind his back to the front of his body by stepping through his cuffed hands. Shiheed did so with the intent of having a supervisor called to his cell. Gursky had the cell door opened, and he and Defendant Sergeant Walter Iser (the "Correctional Defendants") attempted to force Shiheed to allow them to remove the handcuffs. In doing so, the Correctional Defendants knocked Shiheed to the ground, punched and kicked him, and called him a racial slur.

During the altercation, the Correctional Defendants attached a tether to Shiheed's handcuffs, exited the cell, and shut the cell door. The Correctional Defendants pulled Shiheed toward the cell door, forcing his hands through the feed-up slot. Shiheed ceased resisting at this point. The Correctional Defendants removed the handcuffs from Shiheed's right wrist. While removing the cuffs

---

[3] The feed-up slot is a small rectangular security panel in the cell door that opens to allow access to the inmate without having to open the cell door. It is used to serve the inmate food and place or remove an inmate's handcuffs.

from Shiheed's left wrist, the Correctional Defendants slammed the feed-up slot door into Shiheed's wrist and arm.

The sharp metal edge of the feed-up slot door cut Shiheed's arm, causing Shiheed to bleed heavily.  The Correctional Defendants walked away, leaving Shiheed in his cell.  Iser said he hoped Shiheed would die as he walked away.  Later, other correctional officers arrived at the cell, opened it, handcuffed Shiheed, and escorted him to the prison infirmary.  Shiheed was eventually transported to the Western Maryland Regional Medical Center, where he received thirty-eight stitches.

On July 7, 2014, Plaintiff filed a Fourth Amended Complaint (the "Complaint") alleging violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 (2012) and claims for negligent failure to ensure safety and provide medical care, negligent use of excessive force, and battery against all Defendants.  (ECF No. 51).

## II.   DISCUSSION

### A. <u>Standard of Review</u>

#### 1. Motion to Dismiss

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)) (internal quotation marks omitted), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).   In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.   See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

**2. Motion for Summary Judgment**

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).   Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a).

Generally speaking, however, "[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 246-47 (4th Cir. 2002) (quoting 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)). A motion for summary judgment before completion of discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive.

Preliminarily, the Court notes Defendants' Motion does not apply the Rule 12(b)(6) standard of review, and instead applies the Rule 56 standard, relying heavily on references to various exhibits attached to their Motion. (See ECF Nos. 67, 78). Shiheed argues the parties have not yet engaged in discovery and he is, therefore, unable to present facts essential to support his opposition to the Motion. Further, counsel for Shiheed filed a declaration stating that she has not received responses to her discovery requests and is, therefore, unable to sufficiently respond to the Motion. (ECF No. 71-1).

Pursuant to Rule 56(d), if a nonmovant shows by declaration that it cannot present facts needed to justify its opposition, the court may defer consideration of the motion or deny it, or allow time for the nonmovant to take discovery. Fed.R.Civ.P. 56(d). Nevertheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported

claims and defenses from proceeding to trial." Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted).

Because the Court has not issued a scheduling order in this matter and the parties have not engaged in adequate discovery, the Court will not construe the Motion as one for summary judgment. The Court will, therefore, examine the sufficiency of the Complaint under the Rule 12(b)(6) standard.

## B. Analysis

### I. State Defendants[4]

The Court finds Shiheed's claims against the State Defendants are barred. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. See Penhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

While the State of Maryland has waived its sovereign immunity for certain actions brought in state courts, see Md. Code Ann., State Gov't § 12-104(a) (West 2015), it has not waived its immunity under the Eleventh Amendment to suit in federal court, see id. § 12-103(2). The DPSCS is a state agency, Md.Code Ann., Corr.Servs. § 2-101 (West 2015); Md.Code Ann., State Gov't § 8-201, and NCBI is

---

[4] The "State Defendants" include Defendants NCBI, Maryland Department of Public Safety and Correctional Services ("DPSCS"), and the State of Maryland.

its prison. Accordingly, Shiheed's claims against the State Defendants are barred by the Eleventh Amendment. Thus, the Court will dismiss Shiheed's claims against the State Defendants.

## II. Correctional Defendants

### a. Sovereign Immunity

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Shiheed's claims against the Correctional Defendants in their official capacities will be dismissed.

### b. Exhausting Administrative Remedies

The Correctional Defendants argue Shiheed failed to exhaust his administrative remedies regarding his claim for deliberate indifference. The Prisoner Litigation Reform Act ("PLRA") provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir.

2004).  A claim which has not been exhausted may not be considered by this Court.  See <u>Jones v. Bock</u>, 549 U.S. 199, 219-20 (2007).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  See <u>Jones</u>, 549 U.S. at 215-16 (2007); <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.2d 674, 682 (4th Cir. 2005).  Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." <u>Aquilar-Avellaveda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the administrative remedy procedures ("ARP") process.  In order to show administrative exhaustion, the plaintiff must demonstrate that he appealed his grievance all the way to the Inmate Grievance Office through all three steps in the administrative process.

However, once a claim has been referred to the Internal Investigation Unit ("IIU"), the administrative processing of that ARP ceases.  See <u>Oliver v. Harbough</u>, No. ELH-11-996, 2011 WL 642044, at *4 (D.Md. Dec. 19, 2011).  In Shiheed's Request for Administrative Remedy, he states the Correctional Defendants left him in his cell while his skin hung from his arm, exposing his

bone, and his blood spilled to the floor.   (ECF No. 67-3).   He states other correctional officers came to his cell to escort him to a medical room in NBCI.   (Id.).   The Court notes the statements in his Request are similar to the allegations made in the Complaint.   Further, it is clear from the evidence submitted by Defendants that, because the matter was immediately was referred to the IIU, administrative remedies were unavailable to Shiheed for purposes of this claim.   Thus, Defendants' invocation of the affirmative defense of failure to exhaust administrative remedies fails, and Shiheed's Eighth Amendment claim alleging deliberate indifference must be examined on the merits.

### c. Deliberate Indifference

The Court will deny the Motion as to Shiheed's claim for deliberate indifference.   The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.   Gregg v. Georgia, 428 U.S. 153, 173 (1976).   To state a constitutional claim for denial of medical care, however, a plaintiff must demonstrate deliberate indifference to a serious medical need.[5]   Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)); Farmer v. Kavanagh, 494 F.Supp.2d

---

[5] A "serious medical need is one that . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotations omitted).

345, 361 (D.Md. 2007). Deliberate indifference is a high standard. <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention, but failed to either provide it or ensure the needed care was available. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Prison officials show deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976).

As to the objective component, a "serious medical need is one that . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (quoting <u>Henderson v. Sheahan</u>, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotations omitted). The subjective component requires "subjective recklessness" in the face of the serious medical condition. <u>Farmer</u>, 511 U.S. at 839. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." <u>Rich v. Bruce</u>, 129 F.3d 336, 340 n.2 (4th Cir. 1997). If the requisite subjective knowledge is established, however, an official may avoid liability "if [he] responded

reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844.

Shiheed alleges he obtained large lacerations when the Correctional Defendants slammed the feed-up slot into his left arm and wrist, and he began to scream in pain and bleed heavily. Shiheed alleges the Correctional Defendants were aware he was bleeding, but they walked away, leaving him in his cell, and did not call for anyone to help him. Shihed further alleges Iser stated he hoped Shiheed would die as he walked away. Lastly, Shiheed declares other correctional officers responded to his cries for help and escorted him to a medical room for treatment.

The Court finds Shiheed sufficiently alleges he was suffering from a serious medical need and the Correctional Defendants were subjectively aware of it, but failed to respond reasonably. Accordingly, the Motion is denied as to Shiheed's First Cause of Action.

### d. Excessive Force

The Court will deny the Motion as to Shiheed's claim for unlawful excessive force. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the

threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  See Whitley v. Albers, 475 U.S. 312, 321 (1986).

Shiheed alleges that, at the time of the incident, the Correctional Defendants attached a tether to his handcuffs, exited the cell, and shut the cell door.  They pulled Shiheed toward the cell door, forcing his hands through the feed-up slot.  Shiheed alleges he ceased resisting while the handcuffs were being removed. After removing the handcuffs from Shiheed's right wrist, the Correctional Officers allegedly slammed the feed-up slot door into Shiheed's wrist and arm.  The sharp metal edge of the feed-up slot door cut Shiheed's arm, causing Shiheed to bleed heavily.

The Court finds Shiheed has sufficiently alleged that the Correctional Defendants used unlawful excessive force when they allegedly slammed the feed-up slot against his arm.  Accordingly, the Motion is denied as to Shiheed's Second Cause of Action.

### e. Qualified Immunity

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (quoting Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 2001)).  When determining whether a defendant is entitled to qualified immunity, the court must examine (1) whether the facts alleged show the officer's conduct violated a constitutional right;

and, (2) if so, whether the officer's conduct was "objectively reasonable in view of the clearly established law at the time of the alleged event." Id.

Shiheed has sufficiently alleged the Correctional Defendants violated his Fourth and Eighth Amendment rights. Also, the Correctional Defendants do not argue that these rights were not clearly established at the time of the alleged event. Based on Shiheed's allegations, the Correctional Defendants' conduct was not objectively reasonable. Accordingly, the Court finds the Correctional Defendants are not entitled to qualified immunity.

**f. State Tort Claims**

The Court will not dismiss Shiheed's state tort claims as to the Correctional Defendants in their individual capacities. The Maryland Tort Claims Act ("MTCA") states that state personnel are immune from liability for any "tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State [has] waived immunity." Md.Code Ann., Cts. & Jud. Proc. § 5-522(b) (West 2015); see also Md.Code Ann., State Gov't § 12-105.

The Correctional Defendants argue Shiheed fails to sufficiently plead malice or gross negligence because he fails to include those specific terms in his Complaint. Federal Rule of Civil Procedure 9(b) states malice and other conditions of a person's mind may be alleged generally. The Court will, therefore, liberally construe the Complaint in the light most favorable to

13

Shiheed to determine whether his negligence and battery claims adequately allege the Correctional Defendants were acting with malice or gross negligence.

For purposes of MTCA immunity, malice refers to "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Lee v. Cline, 863 A.2d 297, 310-11 (2004). Under his claims for negligent use of excessive force and battery, Shiheed alleges the Correctional Defendants acted with actual malice when they intentionally slammed the feed-up slot into his arm.

Further, gross negligence is defined as

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

Barbre v. Pope, 935 A.2d 699, 714 (2007) (quoting Liscombe v. Potomac Edison Co., 495 A.2d 838, 846 (1985)). Shiheed alleges the Correctional Defendants were deliberately indifferent to his medical needs when they left him bleeding heavily in his cell after intentionally injuring his arm. The Court, therefore, finds Shiheed has sufficiently alleged the Correctional Defendants acted with actual malice or gross negligence. Accordingly, the Court

will not dismiss Shiheed's third, fourth, or fifth cause of action under the MTCA.

### III.   CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants' Motion to Dismiss (ECF No. 67) in part and DENY it in part.  The Complaint is dismissed as to the State Defendants and the Correctional Defendants in their official capacities.  All causes of action remain as to the Correctional Defendants in their individual capacities.  A separate Order follows.

Entered this 15th day of June, 2015

/s/
_____
George L. Russell, III
United States District Judge